IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WAYNE WARD, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>COMMISSIONER OF SOCIAL )<br>SECURITY, )<br>)<br>Defendant. ) | CIVIL ACTION NO. 1:09CV833-CSC<br>(WO) |

**MEMORANDUM OPINION**

**I. Introduction.**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 et seq. and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., alleging that he was unable to work because of a disability. His application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council granted review and gave the plaintiff an opportunity to comment on its proposed decision. (R. at 1-8) The Appeal Council's decision of July 12, 2009, became the final decision of the Commissioner of Social Security (Commissioner).[1]

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

20 C.F.R. § 416.1479.  The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3).[2]  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...

To make this determination[3] the Commissioner employs a five step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of

---

[2] Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge.

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

"not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Ingram v. Comm. of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

A.  <u>Introduction</u>.  The plaintiff was 21 years old at the time of the hearing before

---

[4] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

the ALJ and has a 9th grade education. The plaintiff's prior work experience includes work as a laborer and a sandwich maker. The Appeals Council adopted the findings of the ALJ who concluded that the plaintiff has impairments of borderline intellectual functioning and reading, mathematics and written language disorders. In his written opinion, the ALJ concluded that the plaintiff was not disabled because the plaintiff has the residual functional capacity to perform his past relevant work as a laborer. The Appeals Council disagreed with that conclusion because "his past relevant work . . . was performed at a level less than what is considered substantial gainful activity, and therefore, cannot be considered past relevant work." (R. at 5) Nonetheless, the Appeals Council found that the plaintiff was not disabled.

> The claimant's nonexertional limitations do not significantly affect his residual functional capacity to perform work-related activities at all exertional levels. Using section 204.00 of 20 CFR Part 404, Subpart P, Appendix 2 as a framework for decision-making, the claimant is not disable (20 CFR 416.920(f)). As supported by the vocational expert testimony, the claimant is capable of performing a wide range of unskilled work, including the work of a laborer.

(R. at 6)

    B. <u>The Issues</u>. As stated by the plaintiff, there are three issues in this case:

    1. The Appeals Council improperly relied on the Administration's Medical-Vocational Guidelines ("the Grids") to deny Mr. Ward's claim under step five of the sequential evaluation. It is undisputed that Mr. Ward has several non-exertional impairments which would make exclusive reliance on the Grids inappropriate in this case.

    2. The ALJ erred in rejecting the opinions of the psychologist who examined Mr. Ward at the request of the Administration, and erred in giving "determinative"

weight to the opinion of the state agency psychologist who neither spoke to nor examined the Claimant. The ALJ also failed to develop the record in this case.

3. The ALJ and Appeals Council erred in rejecting the testimony of the Claimant's father, and two individuals who submitted letters on behalf of the Claimant.

### IV.  Discussion

1. <u>The Grids</u>.[5]  An ALJ is required to develop a full and fair record about vocational opportunities available to a claimant.  *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989).

> This burden may sometimes be met through exclusive reliance on the grids. However, " 'exclusive reliance on the grids is not appropriate either when the claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.' " *Walker v. Bowen*, 826 F.2d 996, 1002-03 (11th Cir.1987) (quoting *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir.1985).

*Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995).

In this case, the record before the court affirmatively demonstrates that the Appeals Council did not rely exclusively on the Grids.  As quoted above, the Council used the Grids as a framework for its decision and that use is appropriate if "independent evidence, preferably through a vocational expert's testimony, [is introduced] of existence of jobs in the national economy that the claimant can perform." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002); *see also Smith v. Bowen*, 792 F.2d 1547, 1554-55 (11th Cir. 1986) (stating that the grids "may serve as a framework for consideration of the

---

[5] The so-called "Grids" are the medical-vocational guidelines found at 20 CFR Part 404, Subpart P, Appendix 2.

combination of the exertional and nonexertional limitations"). The regulations likewise permit use of the grids to "provide guidance for decisionmaking." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(d).

A state agency psychologist completed a psychiatric review technique form finding that the plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace. (R. at 313) In addition the agency psychologist found that the plaintiff was moderately limited in his ability to understand and remember detailed instructions, in his ability to carry out detailed instruction and his ability to maintain attention and concentration for extended periods. (R. at 314) The psychologist also found the plaintiff moderately limited in his ability to interact appropriately with the general public and in his ability to respond appropriately to changes in the work setting. (R. at 315) The vocational expert considered these limitations, but testified that they would not preclude the plaintiff from performing work as a laborer. (R. at 51)

The vocational expert also considered the educational limitations found by Dr. Passler, a neuropsychologist. Dr. Passler diagnosed the plaintiff with learning disability (dyslexia, dysgraphia and dyscalculia), left hemisphere dysfunction and adjustment disorder NOS. Dr. Passler also administered the Wechsler Intelligence Scale for Children - III finding that the plaintiff had a Verbal IQ of 72, Performance IQ of 86 and a Full Scale IQ of 77. (R. at 209) The vocational expert concluded that the limitations found by

Dr. Passler would not preclude the plaintiff's work as a laborer.

Thus, in reaching its decision the Appeals Council relied not just on the Grids but also on testimony of a vocational expert whose opinion was informed by the opinions of an agency psychologist and an examining neuropsychologist. The Appeals Council did not commit error.

2. <u>The Consultant Psychologist and Development of the Record</u>.   The plaintiff contends that the ALJ, whose opinion in this regard was adopted by the Appeals Council, erred in rejecting the opinion of Dr. Ghostley who found the plaintiff markedly impaired in the areas of ability to understand, remember and carry out instructions and respond appropriately to supervisors, co-workers and work pressure.  (R. at 299) The vocational expert testified that with those impairments there were no jobs in the national economy which the plaintiff could perform.  (R. at 51)

The ALJ rejected Dr. Ghostley's opinion.

> The Administrative Law Judge has considered the evaluation of the claimant performed by David C. Ghostley, Psy,D on August 18, 2006. 'When asked why he was applying for disability. The claimant stated, "I'm not certain, I guess I can't hold a job for the disabilities I have." The claimant presented to the evaluation as appropriately attired. He exhibited acceptable levels of grooming and personal hygiene. Throughout the examination, the claimant was alert, cooperative, and attentive. Motor activity level was normal. Eye contact was good. No abnormal mannerisms, gestures, or facial expressions were noted. Productivity and flow of speech were normal. He spoke in expressive tones and was coherent and understandable. No receptive language deficits were evidenced.
>
> During the evaluation, the claimant described his mood as being depressed over the past 3 or 4 years. He stated, "It seems like nothing ever goes right

for me." Neuro-vegetative signs of depression were reported as decreased sleep and fluctuating levels of energy. His affect was observed by Dr. Ghostley as flat and restricted in range. He was, however, fully oriented to all relevant spheres and attention was adequate for conversational purposes. The claimant was unable to perform reverse serial 7s, reverse serial 2's, simple mental arithmetic calculations, and he could not spell the word "WORLD" either forward or backward. His memory for remote events was dull. With regard to recent memory, he was able to recall 2/3 verbally presented words following a brief delay with interference. Fund of information was well below average, as was his ability to think in abstract terms. Productivity and structure of thought were normal. There was no evidence of suicidal or homicidal ideation, hallucinations and paranoia, phobias, obsessions, or compulsions. Insight into acknowledging his problems, accepting responsibility for them, and recognizing a need for help was considered fair, as was his judgment with regard to social functioning, family relationships, finances, employment, and future plans. Responses to mathematical and serial tasks, coupled with memory functioning, fund of information, and ability to think in abstract terms, were consistent with a level of intellectual functioning estimated to be within the Borderline Range. Dr. Ghostley listed his diagnostic impression as depressive disorder, not otherwise specified, mathematics disorder, reading disorder, disorder of written language and borderline intellectual functioning.

Dr. Ghostley opined that the claimant's ability to function independently and manage finances was impaired; presently, the claimant's ability to understand, remember, and carry out instructions, as well as to respond appropriately to supervisors, co-workers, and work pressures in a work setting was markedly impaired. Dr. Ghostley further noted that a favorable response to treatment is not expected within the next 6 to 12 months (Exhibits 3F and 4F).

Little weight is assigned to Dr. Ghostley's opinion because there is no objective evidence to show that the claimant has limitations caused by medically determinable impairments that substantially erode his occupational base and are as limiting as Dr. Ghostley suggested. Dr. Ghostley's conclusion was apparently based on "clinical history." as reflected in the reports of the claimant. Moreover, Dr. Ghostley remarked following his evaluation that the claimant appeared to be minimally motivated. Moreover, the record reveals that the claimant has worked at substantial gainful activity since his evaluation with Dr. Ghostley.

> There is no evidence that the claimant has sought any treatment or vocational rehabilitation. The claimant apparently quit school in 2004. Even though the claimant denied significant histories of legal problems and substance abuse during his evaluation with Dr. Ghostley, the record, however, reflects that the claimant was, at one time, using marijuana and cocaine, and his father testified that the claimant served time in a boys home two or three times, as well as in a boot camp on one occasion. During his evaluation with Dr. Ghostley, the claimant reported that on an average day he typically cleaned the house and did yard work. When his girlfriend got off work, he typically went to her house. The record reflects that the claimant is the father of one child; he has another child on the way; he is planning his wedding; and he has worked during the period of adjudication.

(R. at 23-24)

The plaintiff contends that the ALJ erred to reversal when he discounted Dr. Ghostley's opinion. The court disagrees. The plaintiff first argues that the ALJ's conclusion that there was no "objective evidence to show that the claimant has limitations caused by medically determinable impairments . . . " is "simply wrong." To support this argument the plaintiff notes that Dr. Ghostley's opinion was informed by review of Dr. Passler's records which included "objective evidence in the form of formal testing." The problem with this argument is that it elides the fact that when the vocational expert considered the limitations set forth by Dr. Passler, he concluded that the plaintiff could work as a laborer. Moreover, Dr. Passler concluded after extensive testing and dealings with the plaintiff that the plaintiff could benefit from vocational education. (R. at 278)

The plaintiff also attacks every other component of the ALJ's reasons for discounting Dr. Ghostley's opinion. With regard to the motivation argument, while Dr. Passler indeed did characterize the plaintiff's lack of motivation as "understandable," a

9

full review of Dr. Passler's notes show that he believed the plaintiff nonetheless could improve if he demonstrated "a desire/commitment to participate in the program that has been offered to him . . . " (R. at 293) In other words, the record shows that Dr. Passler believed the plaintiff had the capacity to motivate himself to improve.

Next, the plaintiff challenges the ALJ's discounting of Dr. Ghostley's opinion on the basis that "the record reveals that the claimant has worked at substantial gainful activity since his evaluation with Dr. Ghostley."  (R. at 24)  The plaintiff correctly notes that the Appeals Council found that the work done by the plaintiff was not substantial gainful activity and argues, therefore, that the basis for the ALJ's conclusion is faulty. This argument is disingenuous.  The conclusion of the Appeals Council related to the technical question of whether the work done by the plaintiff qualified as past relevant work at step 4 of the sequential analysis.  (R at 5) The record shows that the plaintiff worked, and that was a legitimate factor for the ALJ to consider.

The court will not belabor the analysis.  The court concludes that substantial evidence supports the ALJ's conclusion that the plaintiff is capable of performing work, and the ALJ identified adequately his reasons for discounting Dr. Ghostley's opinion.

Certainly, an ALJ has a duty to develop the record fully and fairly. *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (per curiam).   In this instance, this is what the plaintiff argues.

> Here, Mr. Ward was sent for a consultative psychological examination. However, the ALJ subsequently rejected the opinions of that examiner.

>Therefore, the ALJ did not satisfy his statutory duty to obtain a consultative examination. For this reason as well, this case should be reversed.

(Pl.'s Br. at 11)

The ALJ has no duty to obtain a *favorable* consultative examination, and the ALJ is under no obligation to blindly accept the conclusions of a consultant if they are inconsistent with other evidence. As already noted, the ALJ considered and discounted the opinion of Dr. Ghostley. That is all he is required to do.

    3. <u>Testimony of Family Members</u>. At the hearing before the ALJ, the plaintiff's father testified that he has attempted but failed to teach his son skills as an electrician and as a carpenter. (R. at 46)

>Q    Does he understand instructions?
>
>A    As long as you're there with your hand on it he'll help you, but the minute you tell him to do something he, he didn't grasp it.

*Id.*

Letters from persons who had hired the plaintiff were submitted to the Appeals Council. One letter stated that the plaintiff was hired to do a concrete job, but when the employer "left and came back I had to show him repeatly (sic) what to do and I just could not keep him working." (R. at 168) A second letter lamented that the plaintiff "did not understand" and all of his work had to be redone. (R. at 174)

The plaintiff correctly points out that neither the ALJ nor the Appeals Council mentioned the father's testimony or the letters and certainly did not make any credibility

findings regarding this evidence. After careful review, the court concludes that if the Commissioner's failure to consider this evidence was error, it was harmless error. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying harmless error analysis in the Social Security case context).

For the purpose of analysis, the court will assume that the father's testimony and the letter evidence is correct. Even so, that evidence merely shows that the plaintiff is unable to perform specific types of jobs, not all jobs. The vocational expert testified that even with the limitations described by Dr. Passler, the plaintiff could perform work as a laborer. There is substantial evidence which supports that conclusion.

For the foregoing reasons, the court concludes that the decision of the Commissioner is due to be affirmed. A separate final judgment will be entered.

Done this 30th day of September, 2010.

                                    /s/Charles S. Coody
                                CHARLES S. COODY
                                UNITED STATES MAGISTRATE JUDGE